# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN SANCHEZ-RIVERA,<br>A# 073-830-803,<br><br>                     Petitioner,<br>v.<br><br>JAMISON MATUSZEWSKI, et al.,<br>                     Respondents. | Case No.: 22-cv-1357-MMA (JLB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. No. 1] |

On September 6, 2022, Petitioner Juan Sanchez-Rivera ("Petitioner"), a federal immigration detainee in the custody of the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE") at the Imperial Regional Detention Facility ("IRDF"), proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Doc. No. 1 (the "Petition"). On October 12, 2022, Respondents Jamison Matuszewski, Joseph Suazo, William Derevere, Matthew Allen, and Alejandro Mayorkas ("Respondents") filed a return in opposition to the Petition (the "Return").

Doc. No. 6.  On November 14, 2022, Petitioner filed a reply.[1]  Doc. No. 10.  Upon due consideration and for the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** the Petition.

## I. RELEVANT FACTUAL BACKGROUND

Petitioner is a native and citizen of Mexico.  Doc. No. 6-1 at 20, 24.  Petitioner became a lawful permanent resident of the United States in 2000.  *Id.* at 20, 24.  On December 7, 2017, Petitioner was convicted of assault upon a peace officer and possession for sale of a controlled substance, specifically, methamphetamine.  *Id.* at 24, 29.  Petitioner was sentenced to a total imprisonment term of two years.  *Id.* at 24.  Upon Petitioner's release from prison, ICE detained Petitioner on December 12, 2019.  *Id.* at 20–22.  That same day, ICE filed a Notice to Appear ("NTA") with the immigration court and initiated removal proceedings, charging Petitioner with being removable from the United States as an aggravated felon under 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(F), and 1101(a)(43)(B).  *Id.* at 18–24.  Petitioner was also charged with being removable under 8 U.S.C. § 1227(a)(2)(B)(i) in relation to his drug charge.  *Id.* at 24.

On January 9, 2020, Petitioner first appeared before an immigration judge and requested additional time to obtain counsel.  *Id.* at 28–29.  The immigration court subsequently granted Petitioner twelve more continuances.  *Id.* at 31.  On December 29, 2020, Petitioner requested voluntary departure in lieu of removal at a hearing before an immigration judge.  *Id.* at 31.  That same day, the immigration judge found Petitioner ineligible for voluntary departure as a result of his criminal convictions, and ordered Petitioner removed to Mexico.  *Id.* at 32, 36–37.  On January 6, 2021, ICE conducted a

---

[1] Petitioner initially filed a timely reply on October 17, 2022.  *See* Doc. No. 8.  However, Petitioner indicated that he had not received a copy of the Return, and therefore, did not address the substance Respondents' arguments.  *Id.*  After the Court directed the Clerk of Court to send Petitioner an additional copy of the Return, Doc. No. 9, Petitioner filed the instant, more substantive, reply.

custody determination and concluded that Petitioner should remain in custody because he was a threat to public safety and a flight risk. *Id.* at 38–39.

Petitioner appealed the immigration judge's December 29, 2020 decision, and on April 9, 2021, retroactively changed his pleas in the underlying state criminal convictions. *Id.* at 44. On July 8, 2021, the Board of Immigration Appeals ("BIA") remanded the matter to the immigration judge in light of Petitioner's change of plea and consequently amended conviction history. *Id.* at 44–45. On August 23, 2021, the immigration judge held a master calendar hearing and continued the matter to October 7, 2021. *Id.* at 80. ICE filed updated conviction records and a brief. *Id.* at 46–79. On October 7, 2021, December 1, 2021, January 3, 2022, and January 31, 2022, the immigration judge granted Petitioner continuances for someone to file a Petition for Alien Relative ("Form I-130") with U.S. Citizenship and Immigration Services on Petitioner's behalf. *Id.* at 84–87.

At the hearing on January 31, 2022, Petitioner had yet to file a Form I-130. *Id.* at 88, 93–97. The Court addressed ICE's amended NTA and Petitioner admitted the first seven allegations, but denied the drug charge (8 U.S.C. § 1227(a)(2)(B)(i)). *Id.* at 95. The immigration judge sustained the aggravated felony charge (8 U.S.C. § 1227(a)(2)(A)(iii)) and did not address the drug charge at that time. *Id.* The immigration judge gave Petitioner another chance to show that a Form I-130 had been filed on his behalf, and continued the matter to February 28, 2022. *Id.* at 88–89. At the final hearing on February 28, 2022, no Form I-130 had been filed. *Id.* at 90–99. The immigration judge deemed all immigration applications abandoned and ordered Petitioner removed to Mexico. *Id.* at 90, 99.

On or about March 1, 2022, Petitioner filed a Notice of Appeal with the BIA. *Id.* at 100–04. The BIA dismissed Petitioner's appeal on June 29, 2022. *Id.* at 100–07. On July 6, 2022, Petitioner filed a petition for review with the Ninth Circuit, which has been held in abeyance since September 20, 2022. *Id.* at 108–09; *see also* Doc. No. 8 at 4. Petitioner commenced this case on September 6, 2022. *See* Doc. No. 1.

Based on the record, it appears that Petitioner has not received an initial bond hearing or any individualized determination of whether his continued detention is necessary to ensure the safety of the community or his availability for removal from the United States.

## II. RELEVANT LEGAL BACKGROUND

Federal law has long allowed immigration officials to detain non-citizens (which the governing statutes refer to as "aliens") in a variety of circumstances. *See generally* Hillel R. Smith, Cong. Rsch. Serv., R45915, *Immigration Detention: A Legal Overview* (Sept. 16, 2019). This case concerns one such circumstance: detention during the pendency of an alien's removal proceedings. In that context, one of two statutory provisions applies. The first provision, which sets out the general rule, places the alien's detention within the Attorney General's discretion. *See* 8 U.S.C. § 1226(a). In other words, the Attorney General "may" detain the alien for the duration of removal proceedings, or he "may" release the alien on bond or conditional parole. *Id.* § 1226(a)(1)–(2). Regulations allow an alien detained under § 1226(a) to seek a bond hearing, first before an officer from the Department of Homeland Security and then before an immigration judge. 8 C.F.R. §§ 236.1(c)(8) and (d)(1), 1003.19, 1236.1(c)(8) and (d)(1); *see Nielsen v. Preap*, 139 S. Ct. 954, 959–60 (2019). The alien can request a bond hearing "at any time before" receiving a final order of removal. 8 C.F.R. § 1003.19(a), 1236.1(d)(1).

The second provision, which is an exception to the general rule, makes detention during removal proceedings mandatory when the alien is "inadmissible" or "deportable" for specified reasons—usually because the alien has been convicted of a qualifying criminal offense. 8 U.S.C. § 1226(c). Aliens detained under § 1226(c) do not get bond hearings. Instead, the Attorney General "may" only release the alien if doing so is necessary for limited witness-protection purposes *and* the alien shows that he "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." *Id.* § 1226(c)(2).

1        Here, it is undisputed that Petitioner has been detained pursuant to § 1226(c). *See*
2 Doc. No. 6 at 2–3, 6; Doc. No. 10 at 2.
3        "[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit]
4 have grappled in piece-meal fashion with whether the various detention statutes may
5 authorize indefinite or prolonged detention of detainees and, if so, may do so without
6 providing a bond hearing.'" *Rodriguez v. Robbins* (*Rodriguez II*), 715 F.3d 1127, 1134
7 (9th Cir. 2013) (quoting *Rodriguez v. Hayes* (*Rodriguez I*), 591 F.3d 1105, 1114 (9th Cir.
8 2010)). First, in *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001), two non-citizens, who had
9 been ordered removed but whose removal could not be effectuated due to lack of a
10 repatriation treaty or because their designated countries refused to accept them,
11 challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs
12 detention beyond the ninety-day removal period. *Zadvydas*, 533 U.S. at 678. Applying
13 the canon of constitutional avoidance because a "statute permitting indefinite detention of
14 an alien would raise a serious constitutional problem," the Supreme Court "read an
15 implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-
16 removal-period detention to a period reasonably necessary to bring about that alien's
17 removal from the United States." *Id.* at 689. Thus, "after a presumptively reasonable
18 six-month period of post-removal period detention, the alien was entitled to release if he
19 successfully demonstrated that there was 'good reason to believe there is no significant
20 likelihood of removal in the reasonably foreseeable future.'" *Prieto-Romero v. Clark*,
21 534 F.3d 1053, 1062 (quoting *Zadvydas*, 533 U.S. at 701).
22        Next, in *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a facial
23 challenge to mandatory detention under 8 U.S.C. § 1226(c). *Demore* distinguished
24 *Zadvydas* by emphasizing detention under § 1226(c) has a "definite termination point"
25 and "in the majority of the cases it lasts for less than the 90 days we considered
26 presumptively valid in *Zadvydas*." *Id.* at 529.
27        In the *Rodriguez* class action, non-citizens "challenge[d] their prolonged detention
28 pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized

bond hearings and determinations to justify their continued detention." *Rodriguez v. Robbins* (*Rodriguez III*), 804 F.3d 1060, 1065 (9th Cir. 2015). In *Rodriguez II*, to avoid constitutional concerns, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is implicitly time-limited and expires after six months. Thereafter, the government's authority to detain shifts to § 1226(a), which requires a bond hearing governed by the procedural requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *Rodriguez II*, 715 F.3d at 1138–44. In *Rodriguez III*, the Ninth Circuit held that for non-citizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that non[-]citizens may challenge their continued detention as 'the period of . . . confinement grows.'" *Rodriguez III*, 804 F.3d at 1089 (quoting *Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011)).

In *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the Supreme Court rejected the Ninth Circuit's interpretation that § 1226(c) included "an implicit 6-month time limit on the length of mandatory detention" and reversed *Rodriguez III*, holding that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." *Jennings*, 138 S. Ct. at 842, 846, 847–48. The Supreme Court remanded the case to the Ninth Circuit "to consider [the] constitutional arguments on their merits." *Id.* at 851. The Ninth Circuit, in turn, remanded the case to the district court to consider the constitutional arguments in the first instance, but noted that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 255, 256 (9th Cir. 2018).

Since the *Rodriguez* remand, there has been "a dearth of guidance regarding the point at which an individual's continued mandatory detention under § 1226(c) becomes

unconstitutional." *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019); *see, e.g.*, *Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022) ("Whether due process requires a bond hearing for aliens detained under § 1226(c) is not before us today.  And we take no position on that question."); *Avilez v. Garland*, 48 F.4th 915, 927 (9th Cir. 2022) (declining to make a determination on whether due process required a bond hearing for non-citizen detained under § 1226(c) and remanding to district court for consideration of due process claim).  Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for non-citizens detained under § 1226(c), it has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for non[-]citizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" *Martinez*, 36 F.4th at 1223 (citation omitted).

### III. JURISDICTION

Habeas corpus relief is appropriate when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Habeas corpus proceedings are available as a forum for statutory and constitutional challenges to the authority of the Attorney General to order detention of a person. *See Zadvydas*, 533 U.S. at 688.  As Petitioner challenges his continued detention without an initial bond hearing under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, this Court has habeas corpus jurisdiction over the claims related to his detention.[2]

---

[2] To the extent Petitioner challenges his conditions of confinement, *see* Doc. No. 10 at 5–6, a § 2241 habeas petition is not the proper procedural vehicle for such claims.  *See Nettles v. Grounds*, 830 F.3d 922, 927–34 (9th Cir. 2016) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a [civil rights] action."); *see also Brown v. Blanckensee*, 857 F. App'x 289, 290 (2021) (applying *Nettles* to a federal prisoner and holding that a civil rights action is the appropriate vehicle for federal prisoner's claims relating to the conditions of confinement).  In addition,

## IV. DISCUSSION

Petitioner argues in his Petition that his "prolonged detention without a bond hearing" before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment. Doc. No. 1 at 13. As a result, Petitioner requests that the Court order his release, or in the alternative, order Respondents to schedule a bond hearing for Petitioner before an immigration judge. *Id.* at 14. In their Return, Respondents do not address Petitioner's due process arguments. *See* Doc. No. 6 at 6. Instead, Respondents cite to *Avilez* for the proposition that "Petitioner is lawfully detained without release on bond pending outcome of his [Ninth Circuit] appeal." *Id.* (citing *Avilez*, 48 F.4th at 926–27). *Avilez* held that the *Jennings* case abrogated a portion of the Ninth Circuit's precedent in *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008) "that a [§ 1226(c)] detainee who pursues judicial review of an order of removal is detained first under [§ 1226(c)] and later under [§ 1226(a)]." *Avilez*, 48 F.4th at 925. However, the Court finds *Avilez* inapposite because, as stated above, the Ninth Circuit did not consider whether due process required a bond hearing for a non-citizen detained under § 1226(c). *Avilez*, 48 F.4th at 927. Moreover, the shift in detention authority is not an issue in this case because, importantly, Petitioner concedes that he is detained under mandatory custody pursuant to § 1226(c) and therefore statutorily ineligible for a *Casas-Castrillon* bond hearing under § 1226(a). *See* Doc. No. 10 at 2; *see also German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 209–10 (3d Cir. 2020) (holding that after *Demore* and *Jennings*, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable). Therefore, the only issue in this case is whether

---

the Court declines to construe this Petition as a civil rights claim. *See Sanchez-Rivera v. Archambeault*, No. 21-cv-1654-LL (MSB), 2022 WL 3648450, at *2–3 (S.D. Cal. Aug. 24, 2022) (denying Petitioner's first § 2241 petition challenging his confinement conditions, finding that Petitioner "failed to show that conditions are IRDF are unconstitutional under a habeas petition," and declining to convert the petition to a civil rights claim).

Petitioner's continued detention violates due process such that an individualized bond hearing is required.³

### A.     Due Process

Courts in this circuit have taken various approaches to determine whether due process requires a bond hearing in a particular case. One court concluded that in the absence of controlling appellate authority, the analytical framework set forth in various pre-*Jennings* Ninth Circuit cases supports the "argument that detention becomes prolonged after six months and entitles [the petitioner] to a bond hearing." *Rodriguez v. Nielsen*, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019). Other courts have eschewed this six-month bright-line rule and "have concluded that the decision depends on the individual circumstances of each case." *Gonzalez*, 2019 WL 330906, at *2.

Courts declining to adopt a bright-line rule have taken different approaches in analyzing whether the individual circumstances of a particular case require a bond hearing. The Northern District of California in *Henriquez v. Garland*, No. 22-cv-869-EJD, 2022 WL 2132919 (N.D. Cal. June 14, 2022), applied the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976):

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

---

³ The Court highlights that the issue here is whether Petitioner is entitled to an *initial* bond hearing. The Court expresses no view as to whether due process requires a second or subsequent bond hearing.

*Mathews*, 424 U.S. at 335.  See *Henriquez*, 2022 WL 2132919, at *5–6; *see also Zagal-Alcaraz v. ICE Field Off.*, No. 3:19-cv-01358-SB, 2020 WL 1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020).

Other courts have used an eight-factor test that considers "whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable" and "the nature of the crimes the petitioner committed" in addition to the following six "factors derived from *Zadvydas*, *Demore*, and the First, Third, Sixth, and Eleventh Circuits' pre-*Jennings* decisions regarding the reasonableness of prolonged detention under § 1226(c)":

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (citation omitted). Most recently, the Eastern District of California found that neither the *Mathews* test nor the eight-factor test were "appropriate to determine whether due process requires a bond hearing in a particular case."  *Lopez v. Garland*, No. 22-cv-531-SAB (HC), 2022 WL 4586413, at *6 (E.D. Cal. Sept. 29, 2022).  Instead, the *Lopez* court promulgated a new three-part test which looked "to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government."  *Id*.  This Court agrees with *Lopez* and other district courts that have found "[w]hile the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." *Djelassi v. ICE Field Office Dir.*, 434 F.Supp.3d 917, 920 (W.D. Wash. 2020).  Similarly, the Court agrees that as to the eight-factor test:

> [T]he conditions of detention, the likelihood that the removal proceedings will result in a final order of removal, whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable, and the nature of the crimes the petitioner committed are not particularly suited to assisting the Court in determining whether detention has become unreasonable and due process requires a bond hearing.

*Lopez*, 2022 WL 4586413, at *6. As such, this Court finds that the *Lopez* three-part test is more applicable to the instant case, where the issue turns on whether a non-citizen detainee's prolonged detention has become so unreasonable as to require an initial bond hearing.

First, "[i]n general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" *Gonzalez*, 2019 WL 330906, at *3 (alteration in original) (quoting *Muse v. Sessions*, 409 F. Supp. 3d 707, 716 (D. Minn. 2018)). Here, based on the record, it appears Petitioner has been in immigration detention for at least three years, since approximately December 16, 2019. Doc. No. 1 at 5; Doc. No. 6-1 at 29–33. Accordingly, the Court finds that the total length of detention factor weighs in favor of Petitioner.

Second, Petitioner argues that his appeal to the Ninth Circuit, which has been held in abeyance, "adds weight to the argument that his incarceration will continue well into the future." Doc. No. 10 at 5. The Court agrees and finds that Petitioner's appeal of his removal order to the Ninth Circuit will likely be "sufficiently lengthy such that this factor weighs in favor of Petitioner." *Lopez*, 2022 WL 4586413, at *8; *see also German Santos*, 965 F.3d at 212 (finding that appeal of cancellation of removal order with the BIA "could take months" and potential review in the Third Circuit "would add months more in prison" such that "the likelihood that [petitioner's] detention will continue strongly supports a finding of unreasonableness"); *Banda*, 385 F. Supp. 3d at 1119 (finding that potential appeal of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer and favors granting petitioner a bond hearing).

Third, although Respondents' Return highlights Petitioner's many continuances in this case and his voluntary delay of removal due to his appeal to the Ninth Circuit, the Court finds that "the delay factor is neutral" here. *Lopez*, 2022 WL 4586413, at *8. Petitioner requested most of his continuances during the height of the COVID-19 pandemic when he was attempting to secure counsel. *See* Doc. No. 6-1 at 29–31. Additionally, "the fact that Petitioner chose to pursue the Form I-130 and requested continuances to further that application does not deprive him of a constitutional right to due process." *Henriquez*, 2022 WL 2132919, at *5; *see* Doc. No. 6-1 at 84–89.

In sum, both the length of detention to date, "which is the most important factor," *Banda*, 385 F. Supp. 3d at 1118, and the likely duration of future detention weigh in favor of finding continued detention unreasonable. The delay factor is neutral. Accordingly, the Court finds that Petitioner's continued detention has become unreasonable and due process requires that Petitioner be provided an initial bond hearing.[4]

**B.     Remedy**

In his Petition, Petitioner requests an order securing his immediate release, or in the alternative, a bond "hearing before an immigration judge where . . . to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger[.]" Doc. No. 1 at 14. Petitioner provides no authority to support his claim that he is entitled to an order of release. Therefore, the Court finds,

---

[4] In an abundance of caution, given the uncertainty over which test to apply, the Court notes that the outcome here would be the same under the Supreme Court's *Mathews* test, as each of the three factors weigh in favor of Petitioner. First, although detention during removal proceedings is constitutionally permissible, Petitioner has a liberty interest to be free from arbitrary or unreasonable imprisonment. *Zadvydas*, 533 U.S. at 690. Second, the Court agrees with Petitioner that an initial bond hearing will act as an additional procedural safeguard. Doc. No. 1 at 7, 10–11. And finally, the Court acknowledges that while "the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed . . . [its] interest in detaining Petitioner without providing an individualized bond hearing is low." *See Henriquez*, 2022 WL 2132919, at *5. Furthermore, the cost of providing a bond hearing is relatively minimal. *See, e.g.*, *Marroquin Ambriz* v. *Barr*, 420 F. Supp. 3d 953, 964 (N.D. Cal. Oct. 28, 2019) (noting in context of a § 1226(a) detention, the parties did not contest "that the cost of conducting a bond hearing, to determine whether the continued detention of Petitioner is justified, is minimal.").

consistent with other post-*Jennings* cases, that the appropriate remedy is an initial bond hearing before an immigration judge rather than immediate release.[5] *See, e.g.*, *Lopez*, 2022 WL 4586413, at 9 (denying request for immediate release but ordering bond hearing); *Yagao v. Figueroa*, No. 17-cv-2224-AJB (MDD), 2019 WL 1429582, at *4 (S.D. Cal. Mar. 29, 2019) (same).

## V. CONCLUSION

The Petition is **GRANTED in part** and **DENIED in part**. The Petition is **GRANTED** as to Petitioner's due process claim and request for a bond hearing. Accordingly, within **thirty (30) days** of the date of service of this order, Respondents shall provide Petitioner with an individualized bond hearing before an immigration judge. The Petition is **DENIED** in all other respects.

Dated: January 9, 2023

HON. MICHAEL M. ANELLO
United States District Judge

---

[5] As stated above, Petitioner asserts that at the bond hearing, the government should bear the burden of proof. Doc. No. 1 at 14. This Court agrees with Petitioner and an overwhelming majority of courts that have held that the government must justify the continued confinement of a non-citizen detainee under § 1226(c) by clear and convincing evidence that the non-citizen is a flight risk or a danger to the community. *See Singh*, 638 F.3d at 1200; *see also German Santos*, 543 F. Supp. 3d at 213–14 (collecting cases). Moreover, "the bond hearing must comport with the other requirements of [*Singh*]," where the Ninth Circuit provided guidance as to the procedural requirements for bond hearings. *See Singh*, 638 F.3d at 1208; *Lopez*, 2022 WL 4586413, at *9 n.9. *But see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1210 (9th Cir. Nov. 21, 2022) (finding that *Singh* does not apply in the § 1226(a) context, but taking no opinion on whether *Singh* remains good law § 1226(c) cases).